## Gordon, Secretary, *v.* Colonial-Northeastern Trust Co., Appellant.

74

Argued May 22, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edgar S. Richardson,* with him *Paul C. Wagner* and
*Charles E. Berger,* for appellant.

*P. Herbert Reigner,* with him *George M. Paxson,
Harold D. Saylor,* Deputy Attorney General, and *Wil-
liam A. Schnader,* Attorney General, for appellee.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1933:
Plaintiff brought suit upon the following certificate
of deposit payable on demand, averring its proper en-
dorsement and presentation, and defendant's refusal to
pay it:
"READING, Pa., July 23, 1931.
"Secretary of Banking Commonwealth of Pennsyl-
vania, has deposited with Colonial-Northeastern Trust
Company, Reading, Pa., $30,000 payable on demand to
the order of the Depositor upon the surrender of this

Certificate properly endorsed, with interest at the rate of 4 per cent. per annum.

"$30,000.00                    L. E. PFLUM, *Treasurer.*"

Defendant filed a conglomerate pleading, containing an affidavit of defense, what purports to be new matter, and an alleged set-off, all of which were held insufficient to prevent the summary judgment for plaintiff which was duly entered by the court below. Defendant appealed. The judgment must be affirmed.

In its pleading defendant averred that the certificate of deposit was a renewal of one given by defendant to plaintiff's predecessor in office, in accordance with the terms of a written agreement between the latter and the directors and cashier of the Bank of Auburn, Pa. This being so, and plaintiff not being a purchaser for value without notice, the agreement, so far as relevant, is controlling. Defendant's principal contention is that, by the terms of the agreement, the certificate is not yet collectible. This is a mistake. The agreement recites a present impairment of the capital of the bank and a possible future additional impairment, and then sets forth, in the only provision which has any relation to this matter, the following: "In the event that the [bank] shall fail to make good the impairment as aforesaid of the capital or any such additional impairment as aforesaid, said certificate shall be collected or liquidated and a sufficient amount of the proceeds thereof up to the full amount of said proceeds shall be paid......to make good any such impairment existing at the time of the said collection or liquidation."

It will be noted that this paragraph does not specify any time during which the certificate of deposit was to run, and the rule is that a collateral agreement will not be construed to change any of the terms of a negotiable instrument referred to therein unless it clearly expresses such an intention, and specifies the change to be made. Hence the present one cannot possibly be construed to justify defendant's contention that plaintiff should have

waited until the process of liquidation of the bank had been completed. Indeed, liquidation could not be completed until the certificate was collected, and the amount thereof carried into the secretary's account. Evidently the agreement, like the certificate itself, contemplated payment whenever the secretary should consider that it was his duty to demand it; and, indeed, the secretary was bound, not only to compel the bank to make good any present impairment, but also to proceed forthwith to require the immediate making good of any future impairment, if one should appear. In point of fact, he did all that he could properly do to aid the bank. He not only renewed the certificate of deposit at the end of a year, by taking the one in suit in lieu of that first given, but even after October 19, 1931, when the bank failed and ceased doing business—thereby establishing the fact that it would never be able to make good the impairment of its capital—he waited until January 22, 1932, before demanding payment, and did not bring suit until April 14, 1932.

The only other point to which reference need be made, is the allegation that too much interest was charged against defendant in the assessment of damages, amounting to $31,746.66, entered by the prothonotary on the order of plaintiff. The agreement provides that "Pending the collection or liquidation of the [certificate of deposit, the directors and cashier] shall be entitled to collect and receive the interest which may be payable thereon." Defendant will not be permitted to take advantage of its own wrong in refusing to pay the certificate when demand was made; hence plaintiff is entitled to judgment at least for the $30,000, with six per cent interest from January 22, 1932, which together amount to $31,725. This is $21.66 less than the assessment made. Whether or not there is an explanation for this slight difference we do not know, since the assessment has not been printed, nor, so far as appears, was the matter ever brought to the attention of the court below by a motion

to reduce the assessment, which should have been done if defendant believed it had been overcharged. Of course we cannot reverse the court below for not doing what it was not asked to do, but we give leave to defendant, if it cares so to do, to make such an application, when the record has been returned to that tribunal.

The judgment of the court below is affirmed, with leave to apply for a reduction of the assessment of damages.